*71
Curia, per

Caldwell, Ch.
The instrument under which the questions in this case arise, is in the words fol- ^ lowing:
“ To all people to whom these present writings shall come, be seen, or made known, greeting : Know ye, that I, Thomas Jackson, of the State and district aforesaid, in consideration of the very great love and affection that I bear my son-in-law, James D. Hoof, and daughter, Ann Hoof, of the State and district aforesaid, and for other good causes and considerations me thereunto moving, have given, granted and confirmed unto the joint heirs of said James D. Hoof, and Ann Hoof, his wife, the following negroes, viz Rose, Milly and Jack, to have and to hold the said three negroes, Rose, Milly and Jack, with all the issue "of the said Rose and Milly which they may hereafter have, to the joint heirs of the said James D. Hoof, and Ann, his wife. I, the said Thomas Jackson, for myself, my heirs, executors, and administrators, do warrant and forever defend the said three negroes unto the joint heirs of the said James D. Hoof, and Ann, his wife, and to their heirs shall and will warrant and forever defend, by these presents. In witness wereof, I, the said Thomas Jackson, have hereunto set my hand and seal, this 23d day of October, in the year of our Lord one thousand eight hundred and seventeen, and in the forty-second year of American Independence.
(Signed) Thomas JacksoN, [l. s.]
Signed sealed, and delivered in the presence oí Laban Williams, William Paulding, J. Q.”
There are three classes of persons that have claims under this instrument: 1st. James D. Hoof; 2d. The two children, Thomas C. Hoof and Sarah, who were in esse at its execution; and 3d. The other children of James D. Hoof and Ann, his wife, born since.
But the preliminary point must first be determined — is it a valid deed ?
It has all the requisites of a deed, both in form and substance, except the names of the grantees who are to take under it. The gift is to “ the joint heirs of said James D. Hoof and Ann Hoof, his wife.”
It cannot be controverted that, according to the strict rules of the common law, a deed conveying lands to the heirs of a person living, is void, and cannot be set up either at Law or in Equity. The indefinite description of the donee, and the rules that nemo est hceres viventis, and that a freehold cannot be created to take 'effect in future, combine .to defeat . such an instrument.
But here the subject matter is personal property, and the word heirs is not necessarily used in such conveyances.— The common law, as well as history, often speaks of the *72 heir appparent and of the heir presumptive to the throne of ( Great Britain; and in common parlance he who stands near- ’ est in degree of kindred to the ancestor, is called in his lifetime, his heir, although no one can be an heir, strictly speaking, until the ancestor be dead. The word heir is, apart from its technical meaning, universally used as synonymous with child.
2 Vent. 311. 1 Pr. Wms. 229.
2 Pr. Wms. 342.
Ambler, 274, 1755.
Cox’s Cases, 327; Swinton v. Legare, 2 M’C. Ch. 440; Cole Y. Crayon, 1 Hill Ch. 322.
9 Connect. Rep. 272.
In an ancient case, Burchett v. Durdant, there was a devise to the heirs made of Robert Durdant, then living, and it was adjudged in Westminster Hall, and twice affirmed in the House of Lords, to be a good limitation to George, the eldest son of Robert Durdant, although Robert Durdant was then living. So in Darbien on the demise of Long v. Beaumont, a devise to the heirs male of J. /S', begotten, J. S. having a son, and the testator taking notice that J. S. was then living, was considered a sufficient description of the testator’s meaning, and such son was adjudged to take, though strictly speaking he was not heir.
The case of Thomas v. Bennett arose out of marriage articles, to which greater latitude has been extended than to construction of the limitations of estates; there the words were : “ to the heirs of the body of my niece, Mary Bennett, by her said husband, and to their heirs,” and the Court held that these words shall be construed children.
In Loveday v. Hopkins the words of the will were, “ I give to my sister Loveday’s heirs, £6000.” “ I give to my sister Brady’s children, each £1000.” The sister, Mrs. Love-day, had two children at the making of the will, and she survived the testatrix; one of her children died, leaving children, in the lifetime of the testatrix, and the surviving child claimed the £6000. The master of the rolls, Sir Thomas Clarke, held that the defendants who were the children of the deceased child of Mrs. Loveday, were excluded, and that her surviving child was entitled to the £6000.
Where one gave his wife the residue of his estate, “ for her life and no longer,” and upon her decease he gave and bequeathed it “ to the children of Mr. John Ayton and his wife, Jane, to be equally divided amongst them, the said Jane Ayton’s children, and not to any child by another marriage of either party,” the residue was held divisible amongst the children of Ayton and his wife who were living at the death of testator’s wife, but children born after her death were excluded. There the time of distribution was not indefinite, but was fixed at the death of the tenant for life, and all those that were then in esse, came within the class that were to take the gift.
In Lockwood v. Jessup the plaintiffs brought an action on a promissory note, payable to the heirs of J. iS. and averred that, at the date of the note, they were the children, and the *73 only presumptive heirs of J. S. then living; the word heir was held on demurrer to denote the presumptive heir of a person living, and that the action was sustainable.
4 Des. E. R. 272.
Ib. 459.
1 Bail. R. 119.
M’C.Ch. R. 214.
In Stroman and wife v. Rottenburg and wife, the deed purported to have been made by the donor, “ in consideration of the love I have and bear to my beloved grandchildren of my daughter, Catharina, I have given and granted, &c. unto the said my grandchildren of my daughter, Catharina,” it was held not only to be sufficient, but to comprehend only the, grandchildren then born, and not others born afterwards.
In Moon et al. v. Herndon, incorrectly reported as Moore v. Henderson, the limitation was to a son and his heirs, but if any of the testators children should die without an heir, theu his share to go to the rest of testator’s children ; it was held not too remote, and that the testator used the word heirs as synonymous with children.
In Kitchens v. Craig there was a deed of gift to the heirs of a person then living, in which it was recited that the donor had delivered the slaves which were the subject of the gift to the heirs, and it was held that this recital manifested the intention of the donor to restrain the gift to the heirs or children then living, and that children born afterwards did not take.
Where the words were, “ I give and bequeath unto my dear and beloved grandchildren,” without any qualification or limitation of time or circumstances when distribution should be made; that period was considered indefinite, and the Court, therefore, excluded the grandchildren born after testator’s death, and held that the devise vested only in those born at his death. Myers v. Myers.
The donor when he made this deed knew well the condition and relation of the persons designated in it, and may have adopted the expression, “joint heirs” of James D. Hoof and Ann, his wife, from the fact that they, at that time, had two children, Thomas C. Hoof and Sarah Hoof. From what had already occurred from James D. Hoof’s improvident management of his affairs, the donor may be presumed to have had apprehensions, if he conveyed the negroes to Hoof or his wife, they might be made liable for his debts, and the family lose the benefit of their services, and subsequent events have demonstrated that he acted wisely in not making the conveyance to either of them. Hoof has been insolvent from thence forward, and has, during that period, twice taken the benefit of the Prison Bounds Act, but the negroes have not been embraced in either of his schedules, nor taken by his creditors. As far as such extrinsic evidence can corroborate the construction given to the deed by all parties, it would seem that James D. Hoof has not been considered as the owner of the such circumstances not be conclu *74 sive, hut ave well calculated to raise presumptions against his rjgijk The terms 0f the <jeecj (j0 n0(; convey any interest or estate to any other persons but to the joint heirs of Janies p Hoof, and Ann, his wife, and the enquiry is, do these words sufficiently designate the donees 1 Can such expression be applicable to any other persons than these two children ? If the donee can be identified, either by name or by description, the deed will not be void for want of a proper party to take under it. There is a material difference between a will and a deed ; the latter takes effect from its delivery, and vests the title of the property in the donee immediately ; the former usually looks forward to the future, and contemplates the condition of things at the period of the testator’s death, or the distribution of the estate; hence after-born children are rarely provided for by a deed, the object being generally to pass a present interest, but they are frequently let in under the construction of wills by which gifts are made to children, when there is an anterior interest and they come in esse before its determination, especially if there be no child to take at the time of vesting in possession, or where there is a fixed period for the distribution: a legal remainder in real estate would constitute an exception.
This being a gift inter vivos, and operating per verba in presentí, it must fail if there was no one in esse in whom the title could vest; no one but a child of James D. Hoof, and Ann, his wife, could be their joint heir; and Thomas C. Hoof and Sarah Hoof being the only persons who came within that description, it appears to be sufficiently certain that they were the persons the donor intended should receive the benefit of the gift. Had such persons not been in existence at its execution, it would either have been considered void, or a different construction would have been given to it, from the necessity of the case; no one could take but after-born children, and as there was no definite period for distribution, it might be presumed the donor intended that all the children should come in and participate equally : this interpretation might be given, ut res magis valeat quampereat, and a clear implication might arise from the circumstances in favor of all the after-born children. But here the donor knew that James D. Hoof, and Ann, his wife, had two children living, and as nothing was expressed in or can be implied from the terms of the deed in relation to after-born children, they do not appear to have been either necessary to its completion, or contemplated by it, and it would require a clear and necessary implication from its context, before it could be held to open and let them in. That this was not the donor’s intention, may be inferred from the facts that no contingency was contemplated as necessary to complete the gift, and no period was designated for the distribution of the property among the *75 donees. The slaves given by the deed vested in the children in esse at its execution, and their rights ought not, upon , a slight presumption, to be abridged in favor of those that have been born since; there having been no express provision for them, and there being others who came within the description and were capable of taking, repels the conclusion that they were intended to be included: expressio unius (est) exclusio alterius.
It is apparent from the face of the instrument, that the donor meant that no other class but the “ joint heirs” should receive the benefit of the gift. An immediate interest and title passed to these two children on the delivery of the deed; they then became entitled to the absolute and unconditional enjoyment of the property, and but for the birth of the other-children, there would have been no doubt that they were the only persons the donor intended: their rights stand upon the terms of an express grant; but the claim of the after-born children can, at best, rest only on an implication from circumstances which have arisen independently of the deed, and were unnecessary to its consummation; such, however, as the donor might have anticipated and provided for if he had thought fit: nothing but a clear and necessary implication ought to abridge their vested rights in favor of the after-born children, and the terms of the deed do not warrant such a construction.
It is, therefore, ordered and decreed that Thomas C. Hoof and Sarah Hoof (who has intermarried with W. W. Hole-man) are entitled to the said slaves absolutely in exclusion of James D. Hoof, and Ann, his wife, and of their children born since the delivery of the said deed ; and that the said James D. Hoof do deliver them up to the said Thomas C. Hoof and Sarah, and that his bond, heretofore given, stand as a security for his fulfilment and performance of this decree, and that the circuit decree be modified in these, and that it be affirmed in all other points.
JohNston and Daugin, CC. concurred.

Decree modified.